## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE E. STOLARICK, FOR | : | **CIVIL ACTION** |
| HIMSELF AND ALL OTHERS | : | |
| SIMILARLY SITUATED | : | **NO. 17-cv-** |
| 3200 Byberry Road | : | |
| Hatboro, PA 19040 | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | **CLASS ACTION** |
| | : | |
| KEYCORP t/a KEYBANK, N.A. | : | **12 U.S.C. § 2601,** *Et Seq.* |
| 127 Public Square | : | |
| Cleveland, Ohio 44114 | : | **15 U.S.C. § 1692a,** *Et Seq.* |
| | : | |
| **And** | : | |
| | : | |
| WELTMAN, WEINBERG & | : | |
| REIS, CO., L.P.A. | : | |
| 323 W. Lakeside Avenue | : | |
| Suite 200 | : | |
| Cleveland, OH 44113 | : | |
| | : | |
| **Defendants** | : | |

## COMPLAINT IN CIVIL ACTION

## I.    INTRODUCTORY STATEMENT

1.    A preceding action docketed as *Kyle Stolarick v. First Niagara Financial Group, Inc. t/a First Niagara Bank ,* ["First Niagara Litigation"] U.S.D.C., E.D. Pa. 16-cv-00296 NIQA, went to arbitration on December 2, 2016, resulting in a judgment in favor of Plaintiff and against Defendant.

1

2.      During the arbitration hearing, Plaintiff, Kyle Stolarick, testified that he was prohibited from making payments on line, and, if he went to the bank branch, he would have to go through the embarrassing scenario of the bank teller requiring a supervisor or manager to override his "flagged" account to pay his monthly mortgage payment.

3.      At the conclusion of the arbitration proceeding, counsel for Defendant, First Niagara, advised Plaintiff that he could now go the branch and make a monthly mortgage payment without a supervisor override, or, in the alternative, Plaintiff could mail his check in to First Niagara.

4.      In the afternoon of December 2, 2016, at the conclusion of the First Niagara Litigation, Plaintiff went to his First Niagara bank branch, now KeyBank[1],[2] by merger with First Niagara, to make the December payment and was told:

a.      He could no longer make a payment at the branch with or without a supervisor's or a bank manager's override; and

b.      He had to contact "Collections" at the corporate headquarters of KeyBank to obtain instructions to make his regular monthly mortgage payment.

---

[1] Plaintiff's attorney could find no registration for KeyBank, Key Bank, Key Corp, or Key Corp in the Pennsylvania Corporation Bureau records.
[2] Any reference hereafter to KeyBank or First Niagara is intended to reference KeyBank unless the context specifically indicates otherwise.

5.     That afternoon, Plaintiff called "Collections" and was told that all future monthly mortgage payments must be made to KeyBank's mortgage servicer for accounts that are or have been in bankruptcy, to wit: Weltman, Weinberg & Reis, L.P.A. ("WWR")[3] at an address in Ohio.

6.     Plaintiff was further advised that he owed attorney's fees of $198.00, for which a statement for these attorney's fees had issued to Plaintiff.

7.     Pursuant to the instructions provided by KeyBank "Collections", Plaintiff contacted WWR by telephone, and a representative gave Plaintiff payment instructions with which Plaintiff immediately complied.

8.     It has been subsequently learned that WWR is trading as "KeyBank Exception Payments Processing" (KEPP"), either in a *de facto* and/or *de jure* capacity.

9.     As such, WWR is acting as a "debt collector" as more fully discussed below.

10.     Furthermore, First Niagara, by its designated corporate representative, has acknowledged that any First Niagara mortgage account, the mortgagor(s) of which is/are or has/have been in bankruptcy, is/are

---

[3] Plaintiff's attorney could find no registration for Weltman, Weinberg & Reis, LPA, in the Pennsylvania Corporation Bureau records.

"flagged" for the life of the loan(s) as "nonperforming" loans whether or not the respective payments and the mortgagor(s) is/are and has/have been current in their respective monthly mortgage payments.

11.    This current action, therefore, is based upon the post-2016 litigation activities of KeyBank[4] and its predecessor by merger, First Niagara, individually and jointly with WWR (KEPP).

## II.    **PARTIES**

The statements in the Introductory Statement above, specifically paragraphs one through and including eleven, above, are incorporated herein by reference as if set forth herein at length.

12.    Plaintiff, Kyle E. Stolarick ("Plaintiff" or "Stolarick"), is an individual and a consumer who, at all times relevant, has resided and resides at 3200 Byberry Road, Hatboro, Montgomery County, PA 19040.

13.    Defendant, KeyCorp, trading and also known as KeyBank (hereinafter cumulatively referred to as "KeyBank"), successor by merger with First Niagara Financial Group, Inc. ("First Niagara"), is a national bank with its corporate offices situated at 127 Public Square, Cleveland, Ohio 44114.  As noted above, KeyBank is the successor in interest for the

---

[4] Plaintiff's attorney could find no registration for KeyBank, successor by merger dated July 29, 2016, in the Pennsylvania Corporation Bureau records.

Plaintiff's mortgage with First Niagara Home Finance, LLC., that had traded
as First Niagara Bank, N.A.

    14.    By merger dated July 29, 2016, KeyBank succeeded as
successor in interest to the assets, *inter alia,* of First Niagara, including, but
not limited to, the mortgage of Plaintiff and all mortgages owned and/or
serviced by First Niagara[5] of consumer clients who are or were in
bankruptcy.

    15.    Defendant, Weltman, Weinberg & Reis, Co., L.P.A.
(hereinafter referred to as "WWR" or "KEPP", or both), represents KeyBank
in the following capacity: All monthly mortgage payments to be paid by
current and former debtors in bankruptcy are to be paid to KeyBank through
WWR on a national basis, for which WWR is paid a fee for these
collections.

    16.    These collections through WWR are regardless if the debtors
are and have been current with their respective mortgage payments or not.

    17.    At all times relevant, WWR is a "debt collector" as that term is
defined by 15 U.S.C. § 1692a(6).

---

[5] The context of this Complaint against KeyBank does not involve the
causes of action and/or the facts that were the basis for the Complaint in the
United States District Court for the Eastern District of Pennsylvania,
docketed as *Kyle E. Stolarick v. First Niagara Financial Group, Inc.,*
U.S.D.C., E.D Pa. 16-00296 NIQA, that resulted in judgment in favor of Mr.
Stolarick against First Niagara.

18.     Specifically, WWR is in the business of collecting debt for and on behalf of KeyBank.

19     Plaintiff is a consumer as that term is defined by 15 U.S.C. § 1692a(3).

20.     The scenario described below is applicable not only to Plaintiff but to members of a class as defined below.

21.     These wrongful activities are conducted to illegally and improperly enhance the collections and "bottom line" of both Defendants, and possibly others.

## III.   FACTUAL STATEMENT

The statements in the Introductory Statement and Parties, above, specifically paragraphs one through and including twenty-one, are incorporated herein by reference as if set forth herein at length.

22.     Defendants have and are uniformly engaged in a practice of illegal and deceptive business practices that violate federal and state law.

23.     This scheme is carried out by Defendants by means of centrally controlled, systemized sets of policies and practices.

24.     Defendants' "systems" are knowingly flawed adversely affecting customers who have been and are in bankruptcy.

6

25.    Defendants have intentionally created the mechanisms described below for the illegal and improper purposes similarly designated below.

26.    The wrongful behavior of Defendant, KeyBank, has consisted of the following, *inter alia*:

a.    After Plaintiff successfully completed his Chapter 13 Bankruptcy[6], and while Plaintiff was maintaining current mortgage payments on a timely basis, First Niagara nonetheless received the monthly mortgage payments on a current basis;

b.    However, now the payments are funneled through WWR for which the latter achieves a fee derived from Plaintiff's mortgage payments, or other charges imposed directly or indirectly upon Plaintiff;

c.    Furthermore, Plaintiff has been charged separate attorney's fees for the collections of KeyBank through WWR, even though, again, Plaintiff has maintained a current payment schedule, and has not incurred any legitimate attorney's fees and/or costs that could be charged to Plaintiff. *See* Exhibit "A";

---

[6] Mr. Stolarick had been previously discharged in a Chapter 7 Bankruptcy and was not seeking a discharge in his Chapter 13 Bankruptcy; however, he was curing mortgage arrears and other claims, which were all paid as required to the Chapter 13 Trustee and all allowed creditors, including First Niagara.

     d.     Furthermore, Plaintiff has been barred from the following by KeyBank:

     (1)    Plaintiff is barred from making payments at any branch of KeyBank, but, instead, must mail his monthly mortgage payments to WWR; and

     (2)    Plaintiff is barred from making his monthly mortgage payments on line, but, instead, must mail them to WWR;

     (3)    Resulting in additional improper and illegal costs incurred by Plaintiff;

     d.     Plaintiff is unable to access his mortgage account or any statement on line;

     e.     Most egregiously, Plaintiff has twice requested in writing that he receive monthly mortgage statements, and these requests have been ignored, regardless of the RESPA requirement that a mortgage servicer provide monthly statements;

     f.     Thus, Plaintiff cannot get monthly statements on line or sent to him by either of the Defendants.

27.    Plaintiff 's mortgage account with KeyBank is "flagged"; that is, it is not treated by KeyBank as a current, performing, mortgage loan.

8

28.     Plaintiff's mortgage account with Key Bank is and has been listed as a nonperforming loan, and shall be listed as a :nonperforming loan" for the life of the loan, even though Plaintiff has maintained current mortgage payments.

29.     Upon Plaintiff's completion of his bankruptcy, any and all monthly mortgage arrears accrued on a pre-bankruptcy petition basis AND post-petition obligations were "cured" and/or paid in full so that, as of the date of completion of bankruptcy, Plaintiff was and remains current[7] with his mortgage obligations to Defendant.

30.     Nonetheless, after Plaintiff successfully completed his Chapter 13, Defendant continues to process Plaintiff's mortgage account as if it were not current, in default, and, therefore, nonperforming, and this systemic and systematic processing continues to this day, not only adversely affecting Plaintiff, but all members of the putative class, defined below.

31.     Furthermore, ALL mortgage loans the customers of which have been in bankruptcy or are in bankruptcy are systemically listed by Defendant

---

[7] Plaintiff also maintained current monthly payments to Defendant during his Chapter 13 bankruptcy proceeding, so that the "cure" of arrears coupled with current monthly mortgage payments during the bankruptcy rendered Plaintiff current with Defendant at the completion of the Plaintiff's Chapter 13 bankruptcy.

as "nonperforming loans", regardless if these consumers have maintained or are maintaining a "current mortgage payment status".

32.    As such, ALL mortgage accounts of all customers of Defendant who are or who have been in bankruptcy are treated as "nonperforming loans", regardless if these loans are and have been "performing" and regardless of the payment status thereof.

33.    Thus, Plaintiff's account and those of other customers who have been in bankruptcy, and are performing their respective obligations as required by contract and law, are nonetheless subject to adverse treatment in the form of having their respective accounts listed as "nonperforming".

34.    KeyBank asserts that, when a customer files for bankruptcy, it waives all late charges that may have been incurred, and may be incurred in the future and to the end of the loan (the payoff thereof), in the respective Debtors' mortgage accounts, "as a courtesy"; however, this is not true:

     a.    An investigation by Plaintiff's attorney reveals that, regardless of the stated policy that: "When an account enters bankruptcy or comes out of bankruptcy, as a courtesy to our customers we [KeyBank, N.A. s/b/m/ First Niagara Bank, N.A] does not incur late fees on their account";

     b.    Furthermore, the company-wide policy to waive late charges as testified to as a system-wide practice is not followed;

10

          c.     Thus, the testimony and t he alleged system-wide practice of waiving late charges is belied by the facts, on a company-wide, nation-wide, systematic, practice, to wit:

          (i)     Proofs of claim filed by KeyBank include late fees;

          (ii)     The "corporate representative "testified in the same deposition that, on Plaintiff's account, at least as late as January 29, 2016, there are $2,090.69 charges in late fees that will come off at the end of the loan, or at loan payoff, and that they cannot be removed until then.

          (iii)     By a proof of claim filed January 3, 2017, in the Middle District of Florida, for example, late charges comprise a portion of the secured claim asserted by KeyBank, N.A. s/b/m First Niagara Bank, N.A. *See* Exhibit "B";

          (iv)     This issue regarding late charges is a system-wide issue in that the late charges supposed to be waived are in fact not waived;

          (v)     Defendant's corporate representative testified that:

          (a)     The late charges stay on the books;

          (b)     Plaintiff "doesn't technically owe them because we know we're going to waive them";

          (c)     The further testimony continues:

> "Q.    But you can't take them off now?
> A.    No, we can't.
> Q.    So now he owes them?
> A.    Yes."

d.    Although the issue involving "late charges" was at issue in the First Niagara Litigation, Plaintiff believes and therefore avers that these charges continue to be imposed on KeyBank mortgagors who have been in bankruptcy and who, nonetheless, continue to be charged late fees. *See* Exhibit "B".

35.    KeyBank, by itself, charges attorney's fees to the account of Plaintiff and members of the putative class when KeyBank has no entitlement therefor, either in law or contract. *See* Exhibit "A".

36.    KeyBank, through WWR, charges attorney's fees to the account of Plaintiff and members of the putative class when KeyBank has no entitlement therefor, either in law or contract. *See* Exhibit "A".

37.    WWR charges Plaintiff and members of the putative class for attorney's fees, through KeyBank, or directly, when neither WWR nor KeyBank have any entitlement to such attorney's fees, either in law or contract. *See* Exhibit "A".

38.    It is believed and therefore averred that KeyBank, by itself and/or through WWR, has retaliated against Plaintiff, individually, for the First Niagara Litigation.

39.     Immediately upon the conclusion of the First Niagara
Litigation, these untoward practices have continued on a universal basis for
all of KeyBank's present and past mortgagors who are or have been in
bankruptcy, but are and have been current in their respective mortgage
payment obligations, to wit:

a.     Their accounts are each and all "flagged" as
"nonperforming Loans";

b.     They do not receive monthly mortgage statements;

c.     They are not permitted to pay at a Defendant's branch;

d.     They are not permitted to pay online;

e.     They must make their monthly mortgage payments to a
"debt collector" – WWR;

f.     It is believed and therefore averred that WWR receives a
fee for the debt collection, and the fee therefor is either charged

(i)     Directly to the mortgagor(s); and/or

(ii)     Paid from KeyBank to the "debt collector" from
funds attributed to the paying mortgagor(s).

40.     The systemic practices involve all persons who are or who have
been in bankruptcy and are current with their respective monthly mortgage
payment obligations.

13

41.    Plaintiff asserts that these practices violate the following

statutes and/or constitute the following causes of action:

      a.    15 U.S.C. § 1692a, *et seq.,* the federal Fair Debt
          Collection Practices Act (FDPCA");
      b.    73 P.S. § 201-1, *et seq.*;
      c.    11 U.S.C. § 524, through § 105;
      d.    12 U.S.C. § 2605;

42.    Plaintiff has been injured as follows:

      a.    Creditworthiness has been damaged, resulting in

rejections for the issuance of credit;

      b.    Inability to refinance and/or achieve a loan modification

of Plaintiff's mortgage obligations;

      c.    Late charges imposed when late charges are supposed to

have been waived;

      d.    Imposition of and payment for attorney's fees which are

not and have not been permitted by law or contract;

      e.    The discrimination resulting in Plaintiff not being able to

pay online or at a bank branch, resulting in extra costs;

      f.    The inconvenience of having to mail payments to WWR

and the attendant costs;

      g.    The inconvenience of not receiving monthly statements

in violation of RESPA;

14

       h.     The hidden charges for which Plaintiff has responsibility for the use of WWR as a "debt collector" by KeyBank; and

       i.     Other.

    43.     Plaintiff seeks damages, including, but not limited to, compensatory damages, costs incurred, statutory damages, treble damages, punitive damages, attorney's fees and costs, correction of Plaintiff's credit report, and whatever other relief this Honorable Court may deem appropriate.

    44.     All class members have suffered damages in the same form and for the same reasons as Plaintiff. Plaintiff seeks restitution and injunctive relief for the Class members.

## III.   **JURISDICTION AND VENUE**

    45.     Jurisdiction is conferred upon this Court by and pursuant to 15 U.S.C. § 1692k(d), 12 U.S.C. § 2601, *et seq.*, 11 U.S.C. § 524 through 11 U.S.C. §105 by a citation of contempt of the Discharge Order.

    46.     Venue is appropriate in this district as the violations as to the Plaintiff underlying this action were made in this District; Defendants conduct business in this district; Plaintiff has resided and resides in this district.

## IV.   **CLASS ACTION ALLEGATIONS**

The averments set forth in paragraphs one through and including forty-six, above, including Footnotes and all exhibits, are incorporated herein by reference as if set forth herein at length.

47.    This case is properly maintainable as a nationwide Class action pursuant to and in accordance with Federal Rule of Civil Procedure ("F.R.C.P."), Rule 23(a), and 28 U.S.C. 1332(d), *inter alia*:

(1)    On belief, the Class is so numerous that joinder of all members is impractical. Although the size of the Class is not specifically known, the number of Class members is substantial, believed numbering at least in the thousands[8].

(2)    There are substantial questions of law and fact common to the Class.

(3)    The claims of the representative Plaintiff are typical of the claims of the members of the Class.

(4)    The representative Plaintiff will fairly and adequately protect the interests of the Class under the criteria set forth in F.R.C.P. 23.

---

[8] A national search of PACER.GOV reveals that KeyBank and First Niagara have been involved in approximately 24,000 bankruptcies since the year 2000, of which approximately 25% have been Chapter 13 cases, with some repeats. Approximately 65% of the Chapter 7's and 13's have resulted in discharge.

16

(5)    A class action under the circumstances discussed herein
provides the most fair and efficient method for adjudication of the
controversy under the criteria set forth in F.R.C.P. 23.

48.    This case is properly maintainable as a Class action pursuant to
and in accordance with F.R.C.P. 23(b)(3).

a.    The issues of fact are common to the members of the
Class, as required by Local Rule of Civil Procedure ("Local Rule") for the
Eastern District of Pennsylvania, 23.1(b)(2)(D).

b.    The questions of law are common to the members of the
Class, as required by Local Rule 23.1(b)(2)D).

c.    The questions of law and the questions of fact
predominate for the Class over any questions of law and/or fact affecting
only individual members of the Class.

d.    A Class action is superior to any other action for the fair
and efficient adjudication of the controversy as the commonality of factual
and legal questions for the Class are overwhelmingly predominant.

e.    As the questions of law and of fact are common to the
members of the Class, and considering the prospective individual damages at
issue, the interests of the members of the Class will best be controlled and
served by this action.

17

     f.     There is no reason why the litigation should not proceed in this particular forum.

     g.     There are no unusual difficulties foreseen to be encountered in the management of this Class action.

     h.     Plaintiff is not aware of similar actions involving similar issues filed in the United States District Court for the Eastern District of Pennsylvania.

     i.     The claim by Plaintiff, for himself and for and on behalf of the members of the Class, is justified as a Class action for the reason that, although the size of the Class is not specifically known, the number of Class members is substantial, believed numbering in the thousands on a nationwide basis.

49.     A Class action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Class is overwhelmingly predominant.

50.     As the questions of law and of fact are common to the members of the Class, and considering the prospective individual damages at issue, the interests of the members of the Class will best be controlled and served by this action.

51.    The claims by Plaintiff, for himself and for and on behalf of the members of the Class and the respective sub-classes, are justified as a Class action for the reason that the federal causes of action for the Plaintiff are the same cause of action for all of the members of the Class derived from the following issues, as to KeyBank:

a.    Whether Defendant, KeyBank, systematically lists all consumer mortgagors who have been in bankruptcy and who are current on their mortgage obligations as "nonperforming loans";

b.    Whether being listed as a "nonperforming loan" restricts the listed consumers to only make their mortgage payments through KEPP – WWR, and

c.    Whether mortgagors of KeyBank cannot make payments online or at a bank branch; and

d.    Whether KeyBank is violating 12 U.S.C. § 2601, *et seq.*, specifically:

(i)    Failure to service the mortgage accounts as required by law;

(ii)    Failure to timely responding to QWR's as required by law;

(iii)    Failure to provide monthly mortgage statements;

19

(iv)   Imposing improper charges upon Plaintiff for late charges, attorney's fees and other charges not authorized by law or contract;

(v)   Violating RESPA by the use of WWR as its collection agent; and

(vi)   Whether Defendant has systematically violated its status as a mortgage servicer in violation of 12 U.S.C. § 2605(e) and (k);

e.   Whether Defendant has systematically charged customers who had been or are in bankruptcy for late charges when Defendant's stated policy provides for the waiver of all late charges for its customers who are or had been in bankruptcy;

f.   Whether Defendant has systematically charged its mortgage customer who are or had been in bankruptcy for broker's price opinions and other improper charges incurred during bankruptcy when relief from the automatic stay had been or is in effect;

g.   Whether Defendant has systematically violated 11 U.S.C. § 524, by attempting collect charges discharged in bankruptcy, after bankruptcy, acting in violation of the Bankruptcy Court's discharge injunction and 11 U.S.C. § 105(a).

52.   The claims by Plaintiff, for himself and for and on behalf of the members of the Class and the respective sub-classes, are justified as a Class

20

action for the reason that the federal causes of action for the Plaintiff are the same cause of action for all of the members of the Class derived from the following issues, as to WWR:

      a.    Whether the listed consumers pay attorney fees to or for the benefit of WWR; or

      b.    Whether WWR being paid a fee for servicing the "nonperforming loans" from proceeds paid by the listed consumers;

      c.    Whether WWR, as a "debt collector", is violating the provisions of 15 U.S.C. § 1692a, *et seq.*

      d.    Whether Defendant systematically violated 15 U.S.C. § 1692a, *et seq.*, by attempting to collect mortgage payments and other charges that were/are not permitted by law;

      e.    Whether Defendant systematically violated 15 U.S.C. § 1692a, *et seq.*, by collecting mortgage payments and other charges that were/are not permitted by contract;

      f.    Whether Defendant has systematically violated 15 U.S.C. § 1692e.

53.    As to both Defendants:

      a.    Whether Defendants have systematically violated 11 U.S.C. § 524, by attempting collect charges discharged in bankruptcy, after

21

bankruptcy, acting in violation of the Bankruptcy Court's discharge injunction and 11 U.S.C. § 105(a).

b.   Whether Plaintiff and the members of the Class incurred compensatory damages as a result of these systematic violations and are Defendants liable therefor;

c.   Whether Plaintiff and the members of the Class are entitled to injunctive relief, restitution, interest thereon, attorney's fees, punitive damages, statutory damages and other damages as a result of the systematic violations by Defendants?

## VI.   **THE CLASS**

The averments set forth in paragraphs one through and including fifty-three, above, are incorporated herein by reference as if set forth herein at length.

54.   The above-named Plaintiff brings this action on behalf of himself and for and on behalf of members of the respective Class, against KeyBank:

> **Sub-Class 1**:   All mortgage account customers of Defendant, KeyBank, who are or have been in bankruptcy and are current with their mortgage payment obligations and whose mortgage accounts with Defendant are listed as "nonperforming" loans;

> **Sub-Class 2**:   All mortgage account customers of Defendant, KeyBank, who are or who have been in bankruptcy and are being

22

charged or have been charged late charges by Defendant, KeyBank during and after the respective bankruptcies;

**Sub-Class 3**:   All mortgage account customers of Defendant, KeyBank, who are or who have been in bankruptcy who have been charged attorney's fees while they are and/or have been current with their payment obligations;

**Sub-Class 4**:   All mortgage account customers of Defendant, KeyBank, who have made "Qualified Written Requests" of Defendant to which such requests Defendant, KeyBank, has not responded in violation of 12 U.S.C. § 2605.

**Sub-Class 5**:   All mortgage account customers of Defendant, KeyBank, who are and have been in bankruptcy and to whom KeyBank does not provide monthly statements in violation of 12 U.S.C. § 2605.

**Sub-Class 6**:   All mortgage account customers of Defendant, KeyBank, who have made been in bankruptcy and are current with their respective monthly mortgage payments and who are not permitted by KeyBank to make monthly mortgage payments at a KeyBank branch or directly to KeyBank by mail or online.

55.   The above-named Plaintiff brings this action on behalf of

himself and for and on behalf of members of the respective Class, against

WWR:

**Sub-Class 1**:   All mortgage account customers of Defendant, KeyBank, who are or have been in bankruptcy and are current with their mortgage payment obligations and whose mortgage accounts are being serviced by WWR;

**Sub-Class 2**:   All mortgage account customers of Defendant, KeyBank, who are or who have been in bankruptcy whom have been charged attorney's fees and/or costs by, to or for the benefit of WWR;

23

**Sub-Class 3:**    All mortgage account customers of Defendant, KeyBank, whose mortgage accounts are being serviced by WWR ("KEPP") and to whom notice pursuant to RESPA (12 U.S.C. § 2605, *inter alia*) has not been provided.

## VII.  COMMON CLASS ELEMENTS

The averments set forth in paragraphs one through and including fifty-five, above, are incorporated herein by reference as if set forth herein at length.

56.    Plaintiff and each member of the respective Sub-Classes have been the subject of the systematic discrimination against the putative Class members in violation of RESPA.

57.    Plaintiff and each member of the respective Sub-Classes have been the subject of systematic failure to provide monthly mortgage statements by KeyBank.

58.    Plaintiff and each member of the respective Sub-Classes have been the subject of systematic charges for late fees when such fees are supposed to have been waived universally for any mortgage account customer who is or has been in a bankruptcy proceeding.

59.    Plaintiff and each member of the respective Sub-Classes have been the subject of systematic unlawful, unwarranted collection activity when the respective mortgage accounts are and/or have been current.

60.    Plaintiff and each member of the respective Sub -Classes have been the subject of systematic placement of the mortgage accounts into "nonperforming loan" with the attendant adverse impact upon Plaintiff and member of the respective Sub-Classes by KeyBank.

61.    Plaintiff and each member of the respective Sub -Classes have been the subject of being systematically charged improper charges in violation of 11 U.S.C. § 524, through 11 U.S.C. § 105, having been in contempt of the Bankruptcy Court's discharge Order.

62.    Plaintiff and each member of the respective Sub -Classes have been the subject of the systematic failure of Defendant to conform to the requirements of RESPA.

63.    Plaintiff and each member of the respective Sub -Classes have been the subject of incurred and recurring damages as a result of this systematic and pervasive failure and refusal of Defendant to conform to the requirements of the various laws governing the activities of KeyBank.

64.    Plaintiff and each member of the respective Sub -Classes have been the subject of having great difficulty in achieving credit from prospective lenders, and the like, solely as the result of the failure and refusal of the Defendant to perform its required statutory and practical duties as a mortgage servicer.

65.    Plaintiff and each member of the respective Sub-Classes have suffered damages as the result of the servicing of KeyBank mortgage accounts being serviced by WWR.

66.    Plaintiff and each member of the respective Sub-Classes have been caused to pay attorney's fees and costs to WWR in violation of FDCPA, RESPA, and *et cetera.*

67.    As such, Plaintiff and the members of the respective sub-classes have either been:

      a.    Rejected for credit, such as loan modifications, mortgage refinancing, automobile leasing or purchases, and other credit denials; or

      b.    Required to pay higher interest and other charges,

      c.    Required to pay additional charges by Defendant because of the wrongful charging and other violations of law set forth above;

      d.    Plaintiff has been caused to incur attorney's fees and costs as a result of the wrongful charges and other violations of law set forth above.

68.    The questions of law governing the rights of each member of the respective sub-classes are the same as they relate to Plaintiff, and involve the all-pervasive systematic failures of Defendants, as discussed above.

69.    These systematic failures which have been the subject of notice to Defendants and which Defendants refusal to correct have resulted in injury to Plaintiff and the various class members as more fully discussed above.

## VII.  CAUSES OF ACTION

### COUNT I – VIOLATION OF 15 U.S.C. § 1692a, *ET SEQ.*<br>CLASS ACTION:  KEYBANK, N.A.

The averments of paragraphs one through and including sixty-eight above are incorporated herein by reference.

69.    At all times relevant, Defendant, KeyBank, is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

70.    Specifically, Defendant is in the business of collecting debt as a mortgage holder/servicer in the category defined by section 1692a(6)(F)(iii): Defendant was assigned the Plaintiff's mortgage while the loan was in default.

71.    Plaintiff is a consumer as that term is defined by 15 U.S.C. § 1692a(3).

72.    15 U.S.C. § 1692e provides:  "A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt."  In fact, KeyBank has utilized and continues to

utilize false, deceptive and misleading representations in its handling of Plaintiff's mortgage account, such as:

a.     15 U.S.C. § 1692e(2)(A):The character, amount and legal status of the debt claimed by KeyBank as due and owing;

b.     15 U.S.C. § 1692e(2)(B):     The false representations that the Plaintiff is a "nonperforming loan" and is not entitled to monthly statements, and other misrepresentations described above, which are sequentially false and violative of the FDCPA;

c.     15 U.S.C. § 1692e(10):   False and deceptive means to collect or to attempt to collect these debts to the extent that the cited bases for the debt are false.

73.    15 U.S.C. § 1692f, provides: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." The following conduct by Defendant evidence the violation by KeyBank of the FDCPA:

a.     Defendant used and continues to use unfair and unconscionable means to collect or attempt to collect debts based on false representations as to the alleged debt; specifically, placing the described mortgage accounts into "nonperforming loans" and "flagging" these accounts, when, in fact, these accounts are current;

28

b.    Defendant has continued to collect and misapply payments of illegal and improper charges which further exacerbate the false representations by KeyBank as to the alleged reasons for the accounting categories into which the accounts of Plaintiff are placed by Defendant;

c.    15 U.S.C. § 1692f(1):  The collection of any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law".  The debts attempted to be collected and/or have been collected are not authorized or permitted by law:

(1)    Late fees charged;

(2)    Corporate advances, as discussed above;

(3)    Other applications of the payments made of which Plaintiff is not yet aware.

74.    Plaintiff was current with his mortgage payment obligations at the time of their discharge.

75.    In fact, Plaintiff has been and remains current with his post-discharge payments.

76.    15 U.S.C. § 1692k specifically authorizes a private action to recover damages sustained because of these violations.

77.    The acts and actions that are in violation of the FDCPA occurred within one year of the filing of the original Complaint.

78.    The acts and actions by the "Debt Collector" were clearly knowing and intentional.

79.    The specific acts and action by the Defendant constituting the bases for this Complaint are set forth above, and are incorporated herein by reference, correlated with the attached exhibits.

80.    Plaintiff has suffered and continue to suffer damages in the form of the respective costs to secure legal representation and the additional costs to Plaintiff.

81.    Plaintiff is entitled to recover damages as a result of the violations of the FDCPA by Defendant named above in the form of compensatory damages, statutory damages, attorney's fees and costs and interest.

82.    It is believed and therefore averred that the wrongful actions by KeyBank are knowingly and intentionally in violation of Plaintiff's rights and the FDCPA.

83.    The acts and actions complained of against KeyBank and appertaining to Plaintiff are systematic and universal as applied to the members of the respective sub-classes.

WHEREFORE, Plaintiff prays this Honorable Court grant appropriate damages, including, but not limited to

A.     Certifying the Sub-Classes described, and appointing

Plaintiff as representative of the Sub-Class, and the undersigned as Class

counsel;

B.     Requiring that the Defendant pays compensatory

damages, statutory damages, attorney's fees and costs and experts' fees, and

such other damages as the Court deems appropriate; and

C.     Enjoining the Defendants from conducting such violative

activity in the future, and

D.     Granting such other relief as the Court may deem

appropriate.

## COUNT II– VIOLATION OF 15 U.S.C. § 1692a, *ET SEQ.* CLASS ACTION:  WWR

The averments of paragraphs one through and including eighty-three

above are incorporated herein by reference.

84.     At all times relevant, Defendant, WWR, is a "debt collector" as

that term is defined by 15 U.S.C. § 1692a(6).

85.     Specifically, WWR is in the business of collecting debt as an

attorney representing KeyBank.

86.     Plaintiff is a consumer as that term is defined by 15 U.S.C. §

1692a(3).

31

87.    15 U.S.C. § 1692e provides: "A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." In fact, WWR has utilized and continues to utilize false, deceptive and misleading representations in its activity as a "debt collector" for and on behalf of KeyBank, such as:

a.    15 U.S.C. § 1692e(2)(A):    The character, amount and legal status of the debt repetitively claimed by First Niagara as due and owing;

b.    15 U.S.C. § 1692e(2)(B):    The false representations that the monthly statements and correspondence attached to the Complaint represent the amounts due and owing, which are sequentially false and violative of the FDCPA. There are false representations as Defendant knowingly is owed no such sums;

c.    15 U.S.C. § 1692e(10):    False and deceptive means to collect or to attempt to collect these debts to the extent that the cited bases for the debt are false.

88.    15 U.S.C. § 1692f, provides: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." The following conduct by Defendant evidence the violation by KeyBank of the FDCPA:

32

      a.     Defendant used and continues to use unfair and unconscionable means to collect or attempt to collect money based on false representations as to the alleged debt; specifically, placing the described mortgage accounts into "nonperforming loans" and "flagging" these accounts, when, in fact, these accounts are current;

      b.     Defendant has continued to collect and misapply payments of illegal and improper charges which further exacerbate the false representations by WWR in support of its collections for KeyBank as to the alleged reasons for the accounting categories into which the accounts of Plaintiff are placed by Defendant;

      c.     15 U.S.C. § 1692f(1): The collection of any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law". The debts attempted to be collected and/or have been collected are not authorized or permitted by law:

      (1)     Late fees charged;

      (2)     Corporate advances, as discussed above;

      (3)     Other applications of the payments made of which Plaintiff is not yet aware.

      89.     Plaintiff was current with his mortgage payment obligations at the time of their discharge.

90.    In fact, Plaintiff has been and remains current with his post-discharge payments.

91.    15 U.S.C. § 1692k specifically authorizes a private action to recover damages sustained because of these violations.

92.    The acts and actions that are in violation of the FDCPA occurred within one year of the filing of the original Complaint.

93.    The acts and actions by the "Debt Collector" were clearly knowing and intentional.

94.    The specific acts and action by the Defendant constituting the bases for this Complaint are set forth above, and are incorporated herein by reference, correlated with the attached exhibits.

95.    Plaintiff has suffered and continues to suffer damages in the form of the respective costs to secure legal representation and the additional costs to Plaintiff.

96.    Plaintiff is entitled to recover damages as a result of the violations of the FDCPA by Defendant named above in the form of compensatory damages, statutory damages, attorney's fees and costs and interest.

97.    It is believed and therefore averred that the wrongful actions by WWR are knowingly and intentionally in violation of Plaintiff's rights and the FDCPA.

98.    The acts and actions complained of against WWR and appertaining to Plaintiff are systematic and universal as applied to the members of the respective sub-classes.

WHEREFORE, Plaintiff prays this Honorable Court grant appropriate damages, including, but not limited to

A.    Certifying the Sub-Classes described, and appointing Plaintiff as representative of the Sub-Class, and the undersigned as Class counsel;

B.    Requiring that the Defendant pays compensatory damages, statutory damages, attorney's fees and costs and experts' fees, and such other damages as the Court deems appropriate; and

C.    Enjoining the Defendants from conducting such violative activity in the future, and

D.    Granting such other relief as the Court may deem appropriate.

## COUNT II - UNFAIR AND DECEPTIVE TRADE PRACTICES

The averments of paragraphs one through and including ninety-eight above are incorporated herein by reference as if set forth herein at length.

99.    Defendants have advertised, offered for sale or distribution their respective products and services.

100.    Defendants have engaged in unfair and/or deceptive acts and trade practices, unfair methods of competition, and have practiced other unfair or deceptive acts or practices.

101.    The acts and practices include, but are not limited to:

a.    Knowingly making false and misleading representations of fact, in writing;

b.    Knowingly misrepresenting that the amounts claimed are true and accurate statements of the status of the loan account with Defendant;

c.    Utilizing false and misleading characterizations for the amount claims to be due, intending to mislead the consumer;

d.    Taking any action that cannot legally be taken or justified;

e.    Wrongfully and knowingly misapplying payments;

f    Otherwise engaging in other fraudulent conduct "which creates a likelihood of confusion or of misunderstanding";

       g.     Engaging in any other conduct deemed to constitute unfair trade practices, unfair methods of competition, or other unfair or deceptive acts or practices.

102.   The facts constituting the basis for these unfair trade practices are as set forth above, and the attached exhibits, and the Endnote. Defendants have engaged in other activity further exacerbating its participation in unfair trade practices.

103.   These unfair trade practices in which Defendants have participated are all intertwined with the factors constituting misrepresentation:

       a.     By acts, Defendants have made representations of a material nature that Defendant knew (or should have known) were misrepresentations. These misrepresentations were made to Plaintiff.

       b.     These misrepresentations were made with the intent to cause Plaintiff to reasonably rely to their detriment, which occurred, causing Plaintiff to suffer damage, including, but not limited to, paying sums of money for legal representation, and/or paying sums of money to pay for the debt Defendants claim(ed) Plaintiff owes misrepresenting the legal basis therefor, including, but not limited to, charges imposed and for which payments have been made, and to which there was no entitlement to Defendants;

c.    These misrepresentations were made with the intent to cause Plaintiff to reasonably rely to his detriment which occurred, causing Plaintiff to suffer damage, including, but not limited to, attorney fees to contest the issues.

d.    Because of Defendants' misrepresentations and Plaintiff's reasonable reliance thereon, Plaintiff suffered damages, including the necessary legal representation.

e.    The representations made by Defendants were false, constituting misrepresentations.

f.    These misrepresentations were manifested by mischaracterizations in writings.

g.    Plaintiff reasonably relied upon these misrepresentations to his detriment.

h.    As a result of this reliance, Plaintiff has suffered additional damage, including the payment of attorney's fees.

104.   At all times relevant, Plaintiff is/was a consumer for the mortgage taken over by KeyBank.

105.   It is believed and therefore averred that the misrepresentations were intentional, or at least so recklessly made as to constitute intentional fraudulent statements.

105.   In the cumulative, Defendants have engaged in "deceptive practices" clearly leading to misunderstanding and confusion.

106.   Defendants have, therefore, engaged in unfair trade practices to consumers. As such, Defendant are in violation of or have violated Pennsylvania Statutes 73 P.S. § 201-1, *et seq.* and 73 P.S. § 2270.1, *et seq.*

107.   It is a violation of Pennsylvania's Unfair Trade Practices statute to violate the FDCPA by a "debt collector"; it is a violation of the UTPCPL to commit such acts as are set forth as violative of the UTPCPL as a "creditor".

108.   73 P.S. § 201-2(4) defines as an "unfair method of competition and/or an "unfair or deceptive act", at sub-section (xxi): "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

109.   73 P.S. § 201-9.2 provides for a private action with compensatory and statutory damages, to which Plaintiff is entitled.

110.   73 P.S. § 2270.4 assets that unfair and/or deceptive practices include:

a.   73 P.S. § 2270.4(a): It is a violation of Pennsylvania's Unfair Trade Practices statute to have violated the FDCPA by a "debt collector";

39

b.      73 P.S. § 2270.4(b)(5) provides:  "A creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt."

c.      73 P.S. § 2270.4(b)(6) provides:  "A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt."

d.      73 P.S. § 2270.4(b)(6)(i) provides:  " (i) The collection of any amount, including any interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

111.   Defendants have, therefore, engaged in misrepresentation and fraudulent misrepresentation, and deceptive conduct, causing Plaintiff to suffer damages as set forth above.

WHEREFORE, Plaintiff prays this Honorable Court grant appropriate damages, including, but not limited to compensatory damages, statutory damages, treble damages, punitive damages, attorney's fees and costs, interest and such other relief as the Court may deem appropriate.

## COUNT IV – 12 U.S.C. §§ 2605 and 2609
## CLASS ACTION:  KEYBANK

The averments of paragraphs one through and including one hundred and eleven above are incorporated herein by reference as if set forth herein at

length.

112.    The federal Real Estate Settlement Procedures Act ("RESPA"),

12 U.S.C. § 2605(a), imposes certain requirements on mortgage servicers, to

wit:

a.    When there is a transfer of mortgage servicing from one

servicer to a subsequent servicer, Notice shall be provided pursuant to 12

U.S.C. § 2605(b)(1), *et seq.*;

b.    Contents of the Notice and the time for Notice are

similarly provided in 12 U.S.C. § 2605(b);

c.    The acceptance of payments pursuant to the change of

servicer shall be specifically provided as set forth in 12 U.S.C. §

2605(b)(3)(E);

d.    The transferee of the mortgage servicing is also required

to provide specific Notice as set forth in 12 U.S.C. § 2605(c).

113.    There are  no exceptions applicable to the transfer of the

mortgage servicing from KeyBank to WWR.

114.    Nonetheless, neither KeyBank or WWR complied with the

requirements of Notice set forth above as it relates to Plaintiff and members

of the putative Class pertaining to consumer mortgagors of KeyBank who

are or have been in bankruptcy and are now listed as "nonperforming loans",

41

serviced by WWR.

115.    Furthermore, 12 U.S.C. § 2605(e), requires that, when in receipt of a "Qualified Written Request" (a "QWR"), a response must be given within specified periods of time.

116.    Plaintiff has made requests of both Defendants pursuant to the definition of a QWR set forth in 12 U.S.C. § 2605(e), to the extent that:

    a.    The requests were in writing;

    b.    The requests identified the name, loan number and address of the inquiring party, Plaintiff;

    c.    The requests set forth the "reasons for the belief of the Borrower that " the servicer would specifically know the reason for and purpose of the request "regarding ... information sought by the borrower." *See* 12 U.S.C. § 2605(e)(B);

    d.    Plaintiff was and has been seeking information in the form of monthly mortgage statements to be provided to Plaintiff.

117.    These QWR's have been ignored, and Plaintiff still has not received any monthly mortgage statements.

118.    12 U.S.C. § 2605(f) provides for "Damages and Costs" in the context of both an individual action and a Class action.

119.    Furthermore, 12 U.S.C. § 2605(k) imposes further requirements

upon a mortgage servicer, to wit: *See* 12 U.S.C. § 2605(k)(1)(C) and (D) and (E).

120.   As such, Plaintiff is entitled to the damages provided by 12 U.S.C. § 2605(f)(1)(2)(3).

121.   Defendant's, KeyBank, failure to adhere to the requirements of 12 U.S.C. § 2605(e) and (k) are classwide.

WHEREFORE, Plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

A.   Certifying the Class, and appointing Plaintiffs as representative of the Class, and the undersigned as Class counsel;

B.   Find the Defendant, KeyBank, in violation of 12 U.S.C. § 2605(e) and (k);

C.   Enjoin Defendant, KeyBank, by compelling Defendant, KeyBank, from its violations of 12 U.S.C. § 2605 in the future and to properly and timely respond written qualified requests;

D.   Require that Defendant, KeyBank, pay compensatory damages, attorney's fees and costs and experts' fees, and such damages as permitted by statute;

E.   Granting such other relief as the Court may deem appropriate.

## COUNT V – 12 U.S.C. §§ 2605 and 2609
## CLASS ACTION: WWR

The averments of paragraphs one through and including one hundred and twenty-one above are incorporated herein by reference as if set forth herein at length.

122.   The federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(a), imposes certain requirements on mortgage servicers, to wit:

a.     When there is a transfer of mortgage servicing from one servicer to a subsequent servicer, Notice shall be provided pursuant to 12 U.S.C. § 2605(b)(1), *et seq.*;

b.     Contents of the Notice and the time for Notice are similarly provided in 12 U.S.C. § 2605(b);

c.     The acceptance of payments pursuant to the change of servicer shall be specifically provided as set forth in 12 U.S.C. § 2605(b)(3)(E);

d.     The transferee of the mortgage servicing is also required to provide specific Notice as set forth in 12 U.S.C. § 2605(c).

123.   There are  no exceptions applicable to the transfer of the mortgage servicing from KeyBank to WWR.

124.   Nonetheless, neither KeyBank or WWR complied with the

44

requirements of Notice set forth above as it relates to Plaintiff and members of the putative Class pertaining to consumer mortgagors of KeyBank who are or have been in bankruptcy and are now listed as "nonperforming loans", serviced by WWR.

125. Furthermore, 12 U.S.C. § 2605(e), requires that, when in receipt of a "Qualified Written Request" (a "QWR"), a response must be given within specified periods of time.

126. Plaintiff has made requests of both Defendants pursuant to the definition of a QWR set forth in 12 U.S.C. § 2605(e), to the extent that:

  a. The requests were in writing;

  b. The requests identified the name, loan number and address of the inquiring party, Plaintiff;

  c. The requests set forth the "reasons for the belief of the Borrower that " the servicer would specifically know the reason for and purpose of the request "regarding ... information sought by the borrower." *See* 12 U.S.C. § 2605(e)(B);

  d. Plaintiff was and has been seeking information in the form of monthly mortgage statements to be provided to Plaintiff.

127. These QWR's have been ignored, and Plaintiff still does not receive monthly mortgage statements.

128.    12 U.S.C. § 2605(f) provides for "Damages and Costs" in the context of both an individual action and a Class action.

129.    Furthermore, 12 U.S.C. § 2605(k) imposes further requirements upon a mortgage servicer, to wit: *See* 12 U.S.C. § 2605(k)(1)(C) and (D) and (E).

130.    As such, Plaintiff is entitled to the damages provided by 12 U.S.C. § 2605(f)(1)(2)(3).

131.    Defendant's, WWR, failure to adhere to the requirements of 12 U.S.C. § 2605(e) and (k) are classwide.

WHEREFORE, Plaintiffs pray this Honorable Court grant appropriate damages, including, but not limited to

A.    Certifying the Class, and appointing Plaintiffs as representative of the Class, and the undersigned as Class counsel;

B.    Find the Defendant, WWR, in violation of 12 U.S.C. § 2605(e) and (k);

C.    Enjoin Defendant, WWR, by compelling Defendant, WWR, from its violations of 12 U.S.C. § 2605 in the future and to properly and timely respond written qualified requests;

D.    Require that Defendant, WRR, pay compensatory damages, attorney's fees and costs and experts' fees, and such damages as

46

permitted by statute;

      E.    Granting such other relief as the Court may deem

appropriate.

                    Respectfully submitted:

                    Stuart A. Eisenberg, Esquire
                    Carol B. McCullough, Esquire
                    McCullough Eisenberg, LLC
                    65 West Street Road, Suite A-105
                    Warminster, PA 18974
                    Tel.  (215) 957-6411
                    Fax. (215) 957-9140
                    mlawoffice@aol.com