## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KYLE E. STOLARICK, *ET AL.*** | : | **CIVIL ACTION** |
| | : | **NO. 17-cv-00593 NIQA** |
| **Plaintiff** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **KEYCORP t/a KEYBANK, N.A.,** | : | |
| ***ET AL.*** | : | |
| **Defendants** | : | |

## PLAINTIFF'S RESPONSE TO THE JOINT MOTION
## FOR SANCTIONS AND COUNTER-MOTION FOR SANCTIONS

## I.    FACTUAL STATEMENT

This document is Plaintiff's response in opposition to the Joint Motion of

Defendants, KeyBank, N.A. ("KeyBank") and Weltman, Weinberg & Reis, LPA

("WWR") for Sanctions against Plaintiff and Plaintiff's counsel.

The Defendants' Motion for Sanctions purportedly seeks to punish Plaintiff

and Plaintiff's counsel for the use of deposition testimony by KeyBank's corporate

representative.  The quotes comprised three innocuous, and untrue, quotes

purportedly banned for publication by an alleged verbal "Confidentiality

Agreement" that the Joint movants have claimed ostensibly covered all documents

and all testimony made in depositions of Defendant's. KeyBank, N.A.

("KeyBank") designated corporate representative.

A reading of the relevant portions of the deposition transcript are cited herein, and in Defendants' Motion, that setting forth the parameters of the alleged verbal confidentiality agreement to the extent accepted by the all parties. The discussions memorialized in the depositions and quoted below pertain to documents, only.

The time frame of the underlying facts is as follows, **with emphasis supplied** by Plaintiff's counsel:

A.   March 14, 2018:   Plaintiff's attorney took the deposition of Scott Fink, Esquire, designated corporate representative of Defendant, Weltman, Weinberg & Reis, L.P.A ("WWR"). At page 5 of the deposition of Scott Fink, Esquire, the following discussion occurred 5:21-25; 6:1-10, and 6:19-24, as follows:

5:21-25; 6:1-10:

"MR. EISENBERG:     Okay.  A few preliminary matters that I want to put on the record, please.

I've been given some **documentation** by Ms. Littman, Monica Littman, who represents Weltman, Weinberg & Reis. **These are marked Bates stamp[ed] 0001 through and including 00011**, I believe, yeah.  These are **documents that are confidential** and they will be made subject to a confidentiality agreement that Ms. Littman will draft?

MS. LITTMAN:   Yes.

MR. EISENBERG:     And we will present to the Court for approval. If Mr. Freshwater would like to join in with this, we'll be happy to add him.

MR. FRESHWATER:    Yes. Please.

At 6:19-24:

"MS. LITTMAN:  So today, pending the entry of the confidentiality order, **these documents, 1 through 11, will be attorney's eyes only.**

MR. EISENBERG:       Yeah, yeah, and I agree to that and Mr. Freshwater I believe –

MR. FRESHWATER:    Likewise, yes."

*See* Exhibit "A"

   B.    March 15, 2018:    Plaintiff's attorney took the deposition of Milan

Kubat, Esquire, designated corporate representative of Defendant, KeyBank, N.A.[1]

At page 5 of the deposition of Milan Kubat, Esquire, the following discussion

occurred at 5:5-13, as follows:

"MR. FRESHWATER:   As to the stipulations, any **documents** marked as confidential will be subject to the agreed protective order the parties are entering into.  **To that** the contents of this deposition shall be treated as confidential and the parties shall have an opportunity to review any portion of the deposition that may be subject to the protective order prior to its filing to disclosure to any third parties."

*See* Exhibit "B".

   There are two explanations for the pre-April 26, 2018 confidentiality

agreement:

---

[1] Mr. Kubat was employed by WWR until joining KeyBank in March of 2015.

1.    It pertained strictly to documents, only, although many of the documents had not yet been produced by defense counsel.[2]

2.    There is no meeting of the minds; it is too broad to constitute a valid verbal agreement. It is not a valid contract.

Any discussions regarding that which is subject to the "confidentiality agreement", if there is one, nonetheless never mentioned or contemplated the audio transcriptions discussed below.

The depositions of Mr. Fink and of Mr. Kubat were made available to the parties by the stenographer on April 10, 2018.

Thus, since March 14, 2018, neither KeyBank nor WWR have requested that any specific document or specific testimony be marked as "Confidential", but for the eleven (11) pages referenced by Ms. Littman on March 14, 2018[3].

At no time did Ms. Littman, counsel for WWR, prepared a written confidentiality agreement. Mr. Freshwater only presented a proposed written confidentiality agreement on April 13, 2018. Mr. Freshwater prepared and circulated his draft of the confidentiality agreement on April 13, 2018, one day

---

[2] For example, WWR has refused to provide a document that, as requested by Plaintiff's attorney: "… Describes the function of WWR on behalf of KeyBank for the accounts that have been discharged in bankruptcy or who are currently in bankruptcy." This document appears to be at the heart of Plaintiff's allegations, and its production is denied as "privileged". This and other documents will be the subject of Plaintiff's Motion to Compel production.

[3] Although these documents have been marked confidential at the request of WWR, all of the documents are KeyBank forms used by WWR

after the letter that is the subject of the Motion was published by Plaintiff's

attorney as a result of further investigation by the latter that resulted from a review

of the depositions, documents, and audio transcripts: telephone conversations

recorded by WWR, that revealed that Defendants' testimony was materially

misleading and/or just plain "false".

      a.     Misleading and/or false testimony is not entitled to "confidentiality";

and

      b.     Plaintiff is confronted by a May 31, 2018 discovery deadline[4]

Moreover, each defense attorney had opportunity to prepare a proposed

Confidentiality Agreement from the initial dates of the original Notices of

Deposition and an Amended Notice of Deposition prepared and served by

Plaintiff's counsel, and subsequent dates pursuant to the proposed depositions, as

follows: Notices of Deposition were served by Plaintiff's counsel on December

13, 2017 and January 19, 2018; depositions were conducted on March 14, 2018

and March 15, 2018. Each Notice of Deposition included Requests for Production

of Documents.

A proposed "Confidentiality Agreement" was finally prepared by counsel

for KeyBank and presented to the parties on April 13, 2018, one day after the letter

---

[4] Plaintiff's attorney understands that a deadline can be the subject of an extension given cause.

to bankruptcy counsel was sent to its recipients, with a cover email that reads as
follows:

> "Monica and Stuart, We had previously discussed getting a protective order
> in place on this matter. To that end, I have prepared a form stipulated
> protective order. Please let me know if there are any comments and or
> suggested changes." *See* Exhibit "C"

Moreover, it should be noted that Defendants' Joint Motion quotes the

deposition of KeyBank's deponent, repeating a quote that had been used in

Plaintiff's letter, and attached a copy of the pertinent deposition page to

Defendants' Motion.[5],[6]

Thus, Plaintiff agrees that there is a **proposed** written "confidentiality

agreement" that was approved by all parties, the last party concurring was on April

26, 2018 when the final concurrence of all parties to the written document was

conveyed by email by Plaintiff's attorney. "Richard and Monica: I have no

objection to the Confidentiality Order as proposed by Richard." *See* Exhibit "D".

Needless to say, Plaintiff's attorney does not accept that the April 12, 2018

letter from him violates any agreement to date on confidentiality.

---

[5] Plaintiff did NOT attach a copy of the deposition to the letter of April 12, 2018.
[6] Defense counsel waived any applicable provision of confidentiality by using the
same quote(s) in the context of the Motion and by attaching a copy of the letter at
issue, and not as confidential.

It was not until May 2, 2018 that Ms. Littman purportedly filed the stipulated Written Confidentiality Agreement, although, to date, there is no docket entry recording the filing of the proposed "Confidentiality Agreement."

Furthermore, no Order has issued as of the date of the filing of this Response.

Although not yet approved by the Court, there has been no declaration by any party of any item of the provided documentation or the depositions as to the imposition of "confidentiality", but for several items marked "confidential" by Weltman, Weinberg & Reis, not applicable to this Motion. The point is: but for the eleven pages that Ms. Littman timely applies a "confidential" label, no defense attorney has alluded to, cited, labeled, or otherwise designated any material as "confidential". The spirit of the proposed agreement is made evident in Section 1. (d) that provides a party will, within thirty (30) days of receipt of a document or transcript, or the like, designate that which the party deems "confidential". **NO SUCH DESIGNATION HAS OCCURRED,** even though defendants have had since December and January to assert confidentiality: of course, that is in the spirit of the agreement. Query: What was/is taking Defendants so long to designate that which the respective Defendant deems "confidential?

The letter of April 12, 2018 that is the basis of the Motion for Sanctions contains three quotations from the transcript of KeyBank's designated corporate representative, to wit:

> "All payments for all KeyBank customers, whether they're in bankruptcy or discharged, are made directly to KeyBank." *See* Kubat's deposition, 14:11-13. This statement is essentially false as all payments are made through WWR representatives. *See* below.

> "Individuals can go the branch to make a payment, individuals, if they have online banking access, could make it through online banking, individuals could mail those payments in, individuals could call and make payments over the phone." *See* Kubat's deposition, 14:18-23. This statement is essentially false as all payments are made through WWR representatives. *See* the discussion as it pertains to the instructions of WWR personnel on the audio transcriptions, below.

> [To make a payment by telephone]: "The customers could call either KeyBank or they could call Weltman to make payments." *See* Kubat's deposition, 15:4-6. This statement is essentially false as all payments are made through WWR representatives. *See* the discussion as it pertains to the instructions of WWR personnel on the audio transcriptions, below.

It is unclear why the attorney for WWR joined in the Motion for Sanctions:

1.    The quotes are from KeyBank's designated representative, not WWR's;

2.    Audio tapes involving telephone discussions by and between Plaintiff and WWR, provided by the attorney for WWR, clearly substantiate that customers of KeyBank who were and have received their discharge or are currently in bankruptcy have to go through WWR to pay their mortgage obligations, in

contradistinction to the deposition testimony above[7].  As there is no issue as to

confidentiality of audio tapes, the following are a few of the examples of the

scheme by and between KeyBank and WWR, substantiating the original causes of

action filed in the captioned matter, *inter alia.*[8]

KeyBank requires that all currently-in-bankruptcy customers and those who

have received their discharges deal must handle all monthly payments with and

through WWR, although the actual crediting of payments is through KeyBank.  All

such persons are provided a telephone number(s) to WWR personnel who have

been provided a script by KeyBank.  KeyBank refers all such persons, which may

number 10,000 customers.  The WWR representatives have access to the KeyBank

systems that permit WWR to receive payments and place them into the KeyBank

system.

The WWR personnel appointed to receive the KeyBank payments from

customers who were discharged from bankruptcy or who are currently in

bankruptcy, acknowledge that no written material will explain the use of WWR for

---

[7] It has been further substantiated that WWR did not represent First Niagara, predecessor to KeyBank; thus, the facts in the captioned Complaint were not a continuum of Plaintiff's first lawsuit against First Niagara.  As such, and based on the discovery to date and for other reasons to be asserted therein, several Motions will be filed:  a Motion to Extend the Discovery Period; a Motion to Amend the Complaint including reassertion with substantiating facts learned in discovery that KeyBank has the same and more culpability as originally set forth in the original Complaint.
[8] All of the following are substantiated in the audio tapes provided by WWR and the depositions.

receipt and application of KeyBank payments. *See* audio transcript at 21:22-25; 22:1-3.

*See also* the audio transcript at 23:1-13, at which the WWR operator provides a statement that is absolutely incorrect as it pertains to "those bankruptcy stays."

The point of this comprehensive response is to explain to the Court that:

1.     Correlated with the Complaint, the answer thereto, and the quotations from KeyBank's pages are, as set forth in the letter of April 12, 2018, false and/or intentionally misleading; therefore, they are not entitled to nor have they been so designated by opposing counsel as "confidential":

2.     Since the date of the Notices of Deposition, December 13, 2017 and January 19, 2018, and the relevant subsequent dates, Defendants have failed to specifically designate or otherwise specify any specific document as "confidential"[9].

3.     Since March 14 and 15, 2018, and the relevant subsequent dates, Defendants have failed to specify or identify any statement by the deponents as "confidential".

---

[9] With the exception of several documents not relevant to the Motion and this response.

4.     The discussion with Monica Littman, Esquire, Richard Freshwater, Esquire and Stuart A. Eisenberg, Esquire, on March 14, 2018, references documents, only.

5.     The discussion with Monica Littman, Esquire, Richard Freshwater, Esquire and Stuart A. Eisenberg, Esquire, on March 15, 2018, is clearly correlated with the March 14, 2018 agreement, and pertains to documents, only.

6.     Regardless of the above, no documents were disclosed in the April 12, 2018 letter, even though there have been no follow-up designations of confidentiality by Defendants.

7.     Only after the April 12, 2018, letter did Richard Freshwater issue his proposed "Confidentiality Order" even though Plaintiff's attorney waited to continue his investigation as to the efficacy of testimony by both deponents, testimony that Plaintiff's counsel deems contradictory to the actual facts.

8.     May 31, 2018 has been designated as the discovery deadline, and, by separate Motion, Plaintiff will request an extension.

9.     Furthermore, Plaintiff will be filing a Motion to Compel discovery such as documents requested at the depositions for which Defendants did not deny:

As there is no mention by any party of the audio recordings as subject to the "Confidentiality Agreement", nor could there be any such restriction, as Plaintiff was a party thereto, Plaintiff's counsel believes it is imperative to provide

examples to this Court of the disparity of the deponents' testimony and facts

determined independently from the audio transcriptions of telephone conversations

by and between Plaintiff and WWR personnel:

**December 2, 2016**

KeyBank at its branch told Kyle Stolarick that it cannot accept his mortgage

payment; that he must call the number provided:  A number directly to WWR

Bankruptcy Department.

At the beginning of every telephone call:

"Thanks for calling Weltman, Weinberg & Reis Bankruptcy Department

…."

At page 5:20, *et seq.*: "Basically what happens with KeyBank is once an

account goes through a bankruptcy, you have to speak with our office.  We're the

law firm that represents KeyBank.  All of your payments are going to KeyBank,

everything is still with KeyBank, it's just that you need to speak with us."

At page 6:1-4:      "Unfortunately, you're going – you're not going to be

able to make payments to the branch any longer, but we do have a lot of options

for you to make payments."  This completely contradicts the testimony of

KeyBank's witness.

At page 8:9-10, 16-19:    "Okay.  So you're going to want to call us to make

your payments."

"No, what I would – you're going to want to call and make your payments with us.  I mean, it's the exact same system, it's just that you're supposed to be talking to us [WWR], not to them [KeyBank]."

Furthermore, *see* Exhibit "E", pages 11-13, as follows, all of which contradicts the testimony of the KeyBank deponent, at least:

Page 11:10-23; 12:20-23;18:5-1018:16-25; 19:3-5, copies of which are attached hereto as Exhibit "E".

*See* Exhibit "E":  Audio transcriptions, regarding the payment of $198.00 that is denied by KeyBank in its answer to the Complaint.  *See* KeyBank answer to Complaint at paragraph 6:

> "6.    Plaintiff was further advised that he owed    attorney's fees of
> $198.00, for which a statement for these attorney's fees    had
> issued to Plaintiff."

KeyBank Answer: "6.  Denied."

Finally, much discussion was had regarding the $198.00 purported "attorney's fee", as set forth as an exhibit to the Complaint and cited as an illegal charge by KeyBank.  Although KeyBank issued a flat and certain "Denied" in its answer to the Complaint, the deposition of KeyBank acknowledges the charge, subsequently amended the reason from "attorney's fee" to "Broker's Price Opinion" and "Property Preservation", then to a waiver of those fees in 2018 – after they had been charged – and Plaintiff paid, with the "waiver" resulting in a

13

credit to principal. Before the credit to principal, Plaintiff specifically informed WWR that he did not want it credited principal. *See* Exhibit "E" at 29:5-7:

Kyle Stolarick:      "Okay. Well, see – it was – I don't want it to be charged against my balance either, because ... ."

One last note: KeyBank's charge of the $198.00 preceded the captioned law suit, but only noticed to Plaintiff **after** the merger of First Niagara into KeyBank, formalized in October of 2016. There is a possible class of 10,000 putative members who may have been charged "recoverable corporate balances" after or as a result of the merger, illegal charges that were only noticed to the members of the Class after the merger. The charges, in the alternative, represented by the $198.00 paid by Plaintiff and as evidenced by the exhibits to the Plaintiff's Complaint, were/are for the following, chronologically:

1.      Attorney's Fee, a charge that was and remains an illegal charge pursuant to the Bankruptcy Code. Nonetheless, it was imposed;

2.      After the "Attorney's Fee" was challenged by Plaintiff's Complaint, KeyBank then changed its basis from "Attorney's Fee" to "Broker's Price Opinion" and "Property Preservation", the definition of either of which was unknown by KeyBank's witness, Vice President – Bankruptcy. Such a charge as presented is similarly illegal under the Bankruptcy Code. Nonetheless, it was imposed as a substituted reason for the "Attorney's Fee".

3.      Month's later, the $198.00 was subsequently waived[10] and applied to Plaintiff's principal, specifically against the instruction of Plaintiff not to so apply that illegal charge.

4.      Plaintiff will be filing a subsequent Motion(s) to reinstate the class action claims against KeyBank, and request of the Court the right to amend the Complaint.

## II.    CONCLUSION

Sanctions are inappropriate and uncalled for as a result of Plaintiff attempting to achieve additional and timely and relevant information regarding the activities, actions, and statements by Defendants, both in correlating the answers to the Complaint, deposition testimony, seeking corroborative information through Plaintiff's membership in the Eastern Conference Bankruptcy Bar, and Plaintiff's input as to his own factual occurrences.

Of the greatest importance in the context of the Defendants' Motion are two factors:

1.      KeyBank's designated deponent was not forthright, either by reason of lack of knowledge and/or intentional or recklessly made representations.  In order to support the facts as presented by and/or on behalf of Plaintiff, and a

---

[10] This scenario is a reminder of the old metaphor when the bank robber later regrets stealing from the Bank, and returns the money crying: "But I gave it back!" Yes, and he still robbed the bank.

15

putative class, continuing investigation was clearly necessary and timely, especially because of an impending "fact" discovery deadline. The cited items, not entitled to confidentiality in any respect, appear to be a lynchpin in securing corroboration that the deponent(s) was/were either untruthful and/or an incompetent or inappropriate designated witness.[11]

2.      Defense counsel apparently stalled in drafting [a boilerplate] and/or presenting a proposed "confidentiality agreement", as neither presented such an agreement until after the April 12, 2018 letter. The lack of previous presentation is highlighted by the time frame from December, 2017, to provide a proposed agreement to Plaintiff's counsel.

3.      Furthermore, regardless of the status of the proposed agreement, Defense counsel failed to designate any statements, documents, or other testimony as "confidential", but for the eleven pages so designated by WWR's attorney. Even though the filing of this response is made today, Defense counsel have failed to designate any aspect of the discovery as "confidential". The fact that the Court has not yet issued its Order approving the proposed "confidentiality agreement", the failure of designation of "confidentiality" is at least laches, but most likely an attempt to drag this matter beyond the discovery deadline of May 31, 2018.

---

[11] Even though both defense witnesses are officers of their respective employers, and attorneys.

4.     The proposed verbal "confidentiality agreement" is not a valid agreement for the reasons set forth above; thus, there is no "confidentiality agreement" until three things occur:

     a.     A meeting of the minds and conformity to the elements of a valid verbal agreement; and/or

     b.     The Court's approval of the proposed written agreement; and

     c.     The reasonable designation of confidentiality on a timely basis.

5.     Defense counsel have acted and reacted in bad faith.

These parameters have not been met.

The Motion for Sanctions must be denied.

## COUNTER-MOTION FOR SANCTIONS

The above is incorporated herein by reference as if set forth herein at length.

Defendants' Motion for Sanctions is clearly an attempt to detract and defer this Court's attention from the fact that KeyBank and WWR knew that too many of the pertinent statements provided by their respective deponents were untrue.

Moreover, statements made by the deponents were in substantial contradistinction to the Plaintiff's factual statement in the Complaint, and, more importantly, in contradiction to WWR's telephone audio transcriptions of discussions by and between Plaintiff and WWR's representatives, those receiving all telephone inquiries and payments, *et cetera,* for and on behalf of KeyBank, but

definitely, not KeyBank, evidencing a much more sophisticated scheme by and between the defendants.

The unilateral recordings by defendants and the statements made therein provide a much clearer picture about that which is clearly an agreement of defendants as represented in the audio transcriptions as opposed to the responses to the Complaint that obviously are not responsive and are not true.

WHEREFORE, Plaintiff asks this Honorable Court find in favor of Plaintiff and against Defendants and grant such damages, including attorney's fees, as the Court shall determine.

Respectfully submitted:

Stuart A. Eisenberg, Esquire
Carol B. McCullough, Esquire
McCullough Eisenberg, LLC
65 West Street Road, Suite A-204
Warminster, PA 18974
Tel. (215) 957-6411
Fax. (215) 957-9140
mcculloughelsenberg@gmail.com
May 17, 2018